UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60908-BLOOM/Otazo-Reyes

JUAN GRIEBEN, *et al.*, *individually and
on behalf of all others similarly situated*,

    Plaintiff,

v.

FASHION NOVA, INC.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Fashion Nova, Inc.'s Motion to Dismiss, ECF No. [9] ("Motion"). Plaintiffs Juan Grieben and Tynikal Pressley (together, "Plaintiffs"), filed a Response, ECF No. [11], to which Defendant filed a Reply, ECF No. [14]. The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part.

**I.**    **BACKGROUND**

This case arises from alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059. In the Complaint, Plaintiffs allege that Defendant engages in unsolicited text messaging to those who have not provided Defendant with their prior express written consent, and engages in telemarketing without the requisite policies, procedures, and training. ECF No. [1] ¶¶ 2-3. Defendant is alleged to be a foreign corporation and a "telephone solicitor" as defined by the FTSA. *Id.* ¶ 9. Plaintiffs also allege that "Defendant initiated and directed the transmission of

unsolicited advertisement or telemarketing text messages to Plaintiffs' cellular telephone number to sell goods, services or products in Florida." *Id.* ¶ 12. Plaintiffs' telephone numbers have Florida area codes, and Plaintiffs received the text messages while residing and present in Florida. *Id.* Plaintiffs allege that they received several unsolicited automated text messages from Defendant without their consent. *Id.* ¶¶ 14-15, 24, 27, 42. As a result, Plaintiffs assert four claims against Defendant for violations of the TCPA and the FTSA. Specifically, Plaintiffs' TCPA claims are premised upon violations of 47 C.F.R. § 64.1200(d) for failure to (1) maintain required written policies, (2) provide training to telemarketing personnel, (3) maintain a standalone do-not-call list, (4) identify the name of the individual caller, (5) the name of the legal entity on whose behalf the call is made, and (6) a telephone number or address at which Defendant may be contacted. *Id.*, Counts II and V.[1] Plaintiffs' FTSA claims are premised upon Defendant's failure to obtain prior express written consent in violation of Florida Statutes § 501.059(8)(a). *Id.* Count I.[2] Plaintiffs assert their claims on behalf of themselves and three proposed classes. *See id.* ¶ 46.

In the Motion, Defendant requests that the Court dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and raises certain preemption and constitutional challenges to the FTSA.

## II. LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

---

[1] In Count III, Plaintiffs seek injunctive relief for Defendant's alleged violations of the TCPA and associated regulations.

[2] In Count IV, Plaintiffs seek injunctive relief for Defendant's alleged FTSA violations.

2

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

### III. DISCUSSION

Defendant seeks dismissal of all of Plaintiffs' claims on several grounds. Defendant argues that the TCPA claims (Counts II, III, and V) should be dismissed because Plaintiffs' counsel has argued in other cases that the TCPA does not regulate text messages, the Complaint fails to allege

3

that Plaintiffs' numbers were on the national do-not-call list or Defendant's entity-specific do-not-call list, and the alleged text messages were sufficient to meet the TCPA's "identification" requirement. Defendants contend that the FTSA claims (Counts I and IV) should be dismissed because the FTSA regulates intrastate text messages, the FTSA is preempted by the TCPA with respect to interstate communications, and the FTSA violates the Commerce and Dormant Commerce Clauses of the United States Constitution. The Court considers each argument in turn.

### A. The TCPA regulates text messages

Defendant argues that the TCPA provisions relevant to Plaintiffs' claims refer only to "calls" and not to text messages.[3] Plaintiff responds that the TCPA covers text messages. Upon review, Defendant's argument on this point is contrary to governing law. The Eleventh Circuit has held that even though "the statute has been silent as to text messaging, for that medium did not exist in 1991 . . . under its TCPA rulemaking authority, the FCC has applied the statute's regulations of voice calls to text messages." *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) (citations omitted). In addition, the Supreme Court noted that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (citation omitted). As such, the Court will not dismiss Plaintiffs' TCPA claims on this basis.

### B. Plaintiffs lack standing to assert their TCPA claims

Defendant argues next that Plaintiffs' claims premised upon violations of TCPA requirements regarding the national do-not-call list ("NDNC List") and entity-specific do-not-call list ("EDNC List") fail because the Complaint does not allege that Plaintiffs' numbers were on

---

[3] Defendant also urges the Court to review and rely upon a statement made by Plaintiffs' counsel during a hearing in an unrelated case involving arguments with respect to a plaintiff's standing. *See* ECF No. [9-1]. However, Plaintiffs' counsel's statements are not allegations, and do not otherwise form the basis for Plaintiffs' claims, therefore Court declines to consider or rely upon them.

either the NDNC List or EDNC List. According to Plaintiffs, Defendant misunderstands the regulatory basis for their claims by referring to 47 C.F.R. § 64.1200(c), while Plaintiffs' claims arise as a result of alleged violations of 47 C.F.R. § 64.1200(d).

The TCPA authorized the Federal Communications Commission ("FCC") to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The regulations promulgated created the NDNC List and EDNC Lists. The NDNC List is maintained by the federal government, and the EDNC Lists are created and maintained by companies that engage in telemarketing. *See* 47 C.F.R. § 64.1200(c)(2), (d)(6). Section 64.1200(c) contains provisions applicable to the NDNC List, and section 64.1200(d), which Plaintiffs rely upon, applies to the EDNC Lists.

> Section 64.1200(d) states in pertinent part that
>
> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are

recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d)(1)-(4). Plaintiffs allege that Defendant violated these provisions by failing to (1) maintain the required written polices, (2) provide training to personnel engaged in telemarketing, (3) maintain a do-not-call list, and (4) sufficiently identify the caller. *See* ECF No. [1] ¶¶ 67, 90. Plaintiffs do not allege that they requested to be placed on Defendant's EDNC Lists. Rather, Plaintiffs allege that Defendant's failure to provide instructions on how to opt out is "indicative" of Defendant's failure to comply with the requirements in 47 C.F.R. § 64.1200(d). *Id*. ¶ 23.

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (en banc). "'The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343

(1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, ––– U.S. –––, 140 S. Ct. 900, 205 L. Ed. 2d 467 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.'" *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S. Ct. 1601, 60 L. Ed. 2d 66 (1979)). In other words, to establish standing, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

Upon review, these allegations are insufficient to establish Plaintiffs' standing to state a claim under the TCPA. *Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1271-72 (11th Cir. 2019), upon which Defendant relies, but which Plaintiffs fail to address, is dispositive here. In *Cordoba*, the

plaintiff initiated a class action lawsuit alleging that the defendants violated the TCPA's regulatory scheme, including the provisions in section 64.1200(d). *Id*. at 1266. Unlike Plaintiffs here, the named plaintiff in *Cordoba* repeatedly asked not to be called. *Id*. at 1264. As a result, the Eleventh Circuit concluded that the named plaintiff had standing. *Id*. However, with respect to the individual class members who did not ask the defendants to stop calling them, the Eleventh Circuit concluded that they "were not injured by the failure to comply with the regulation" and "[t]hat means their injuries are not fairly traceable to DIRECTV's alleged wrongful conduct, and therefore they lack Article III standing to sue DIRECTV." *Id*.

> Significantly, the Eleventh Circuit in *Cordoba* determined that
>
> if an individual not on the National Do Not Call Registry was called by Telecel and never asked Telecel not to call them again, it doesn't make any difference that Telecel hadn't maintained an internal do-not-call list. Telecel could and would have continued to call them even if it had meticulously followed the TCPA and the FCC regulations. For these individuals, then, their injury wouldn't be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130 (quoting *Simon* [*v. E. Ky. Welfare Rights Org*.], 426 U.S. [26,] 41 [(1976)]) (emphasis added and alterations adopted). There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who never said to Telecel they didn't want to be called again. These plaintiffs therefore would lack Article III standing to sue.

*Cordoba*, 942 F.3d at 1271. Here, where the Complaint does not allege that Plaintiffs asked to be placed on Defendant's EDNC List, the failure to comply with the regulatory requirements related to EDNC Lists did not cause Plaintiffs' alleged injuries. Thus, as in *Cordoba*, the allegations in the Complaint are insufficient to establish Plaintiffs' standing to sue for Defendant's alleged violations. *See Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) ("The party invoking federal jurisdiction bears the burden of proving standing.") (quoting *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000)). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no

longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)).

Plaintiffs' TCPA claims are due to be dismissed. The Court therefore considers whether leave to amend the TCPA claims is warranted.

### C. Leave to amend

Defendant requests dismissal of Plaintiffs' TCPA claims with prejudice. Defendant contends that Plaintiffs cannot amend to allege that they were registered on either the NDNC List or Defendant's EDNC List and attaches confirmation that neither Plaintiff requested to have their number placed on the NDNC list. *See* ECF Nos. [9-2], [9-3]. However, when considering facts outside the Complaint, the court may only examine documents that are: (1) referred to in the Complaint; (2) central to the plaintiff's claim; and (3) of undisputed authenticity. *See Roberts v. Carnival Corporation*, 824 F. App'x 825, 826 (11th Cir. 2020); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). Here, the documents attached by Defendant to confirm that neither Plaintiff registered their number on the NDNC List are not referred to in the Complaint, nor does the Court find that they are central to Plaintiffs' claims because Plaintiffs' claims are premised upon violations of 47 C.F.R. § 64.1200(d), which relates to EDNC requirements. In addition, Defendant does not assert, nor

does the Court find, that the documents are undisputed in terms of authenticity. As such, the Court does not consider them.

Federal Rule of Civil Procedure 15 governs amended pleadings generally and provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the rule in the Eleventh Circuit is that "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). "Filing a motion is the proper method to request leave to amend a complaint," and the motion "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999); *see also* S.D. Fla. L.R. 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment to the motion[.]").

In this case, Plaintiffs have not requested leave to amend, either in response to Defendant's Motion or before expiration of the deadline to file amended pleadings established in the Court's Scheduling Order. *See* ECF No. [16]. As such, the Court does not find that leave to amend is warranted. *See also Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (noting that where the only request to amend appears in an opposition to a motion to dismiss, the issue is not properly raised) (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)).

**D. The Court declines to exercise its jurisdiction to hear Plaintiffs' FTSA claims**

The Court has determined that the Complaint fails to establish that Plaintiffs have standing to sue under the TCPA, which forms the basis for the Court's exercise of original subject matter

jurisdiction. As a result, the Court does not reach Defendant's arguments regarding the FTSA claims.

The Complaint alleges that jurisdiction over Plaintiffs' FTSA claims arises pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367. *See* ECF No. [1] ¶ 11. But "[s]upplemental jurisdiction is, by its very nature, not original but additional; that is, it relies on the existence of some other original basis of jurisdiction.". *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1565 (11th Cir. 1994). The court may, at its discretion, decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

By finding that dismissal of Plaintiffs' TCPA claims is warranted, the Court has dismissed all claims over which it has original jurisdiction. In deciding whether to exercise its discretion to hear a state law claim, the Court should consider judicial economy, convenience, fairness, and comity. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). Moreover, the Eleventh Circuit has held that where a plaintiff's federal claim is dismissed prior to trial, dismissal of state law claims is "strongly encouraged." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In addition, the Eleventh Circuit has held that "[b]oth comity and economy are served when issues of state law are resolved by state courts." *Rowe*, 279 F.3d at 1288.

Case No. 22-cv-60908-BLOOM/Otazo-Reyes

Given that Plaintiffs' remaining claims arise under a Florida statute, and considering the early stage of the proceedings, the Court determines that judicial economy, convenience, and comity weigh in favor of the Court declining to exercise its discretion to hear Plaintiffs' FTSA claims.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, **ECF No. [9]**, is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' TCPA claims are dismissed without prejudice for lack of subject matter jurisdiction, and without leave to amend. Any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 27, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record